## MORGAN v. NUNN.

(Circuit Court, M. D. Tennessee. January 24, 1898.)

### No. 3,152.

1. CIVIL SERVICE LAW—POWER OF REMOVAL.
   With the exception of section 13 of the act of January 16, 1883, which prohibits promotion, degradation, removal, or discharge of any officer or employé for giving or withholding or neglecting to make any contribution of money or other valuable thing for any political purpose, no legislative declaration expressly bearing upon removals from office is made.

2. SAME—EXECUTIVE RULES.
   Civil service rules promulgated by the executive, so far as they deal with the executive right of removal, are but expressions of the will of the president, and are regulations imposed by him upon his own action, or that of heads of departments appointed by him. They do not give the employés within the classified civil service any such tenure of office as to confer upon them a property right in the office or place.

3. SAME—INJUNCTION.
   A court of equity will not, by injunction, restrain an executive officer from making a wrongful removal of a subordinate appointee, nor restrain the appointment of another. Priddie v. Thompson, 82 Fed. 186, disapproved.

Frank P. Bond, for plaintiff.

S. Brown, U. S. Atty., and Chas. C. Burch, Asst. U. S. Atty., for defendant.

LURTON, Circuit Judge. The complainant, William C. Morgan, is a general clerk in the office of the collector of internal revenue for the Fifth district of Tennessee. He was first appointed and qualified during the incumbency of Frank P. Bond as collector; and while serving under that appointment the position was placed within the classified service by the executive order of November 2, 1896, promulgating amended civil service rules, and extending the executive civil service so as to include places of the character held by complainant. Upon

the expiration of the term of office of said Bond, the defendant, David A. Nunn, was appointed and qualified as collector, and said Nunn thereupon reappointed Morgan to the place of general clerk, and took from him a new bond and oath of office. The bill avers that said Nunn, in violation of the civil service law, is now seeking to degrade or remove complainant, and appoint another in his place, wholly upon the ground that complainant is a Democrat; the defendant being a Republican. To accomplish this purpose, the bill charges, said Nunn, well knowing that no charges had been or could be successfully preferred against complainant, and well knowing that complainant had faithfully and diligently discharged all the duties incumbent upon him as a general clerk, and well knowing that complainant had not applied for, and would not accept, the place of storekeeper and gauger, had nevertheless recommended him for such an appointment to the commissioner of internal revenue, and that the latter had made the appointment as requested, and forwarded to complainant a bond to be executed for the discharge of the duties of storekeeper and gauger. This bond complainant returned without having executed same, and notified both the commissioner and collector that he had never applied for such a place, and would accept no such appointment. The bill then charges that the collector has announced his purpose to remove complainant, and to appoint another in his room and stead, and that he will do so unless restrained, to the irreparable damage and injury of complainant. The place of storekeeper and gauger is a place much less desirable, in point of character and salary, than that held by complainant. A restraining order was granted to preserve the statu quo until formal application could be made for a temporary injunction. By direction of the attorney general, the district attorney for this judicial district has appeared for the defendant, and has filed a demurrer, questioning the jurisdiction of the circuit court to grant the relief sought.

The act of January 16, 1883, commonly called the "Civil Service Act," deals in no direct way with the tenure of office of those persons then, or who might thereafter be, included within the classified service. Nor does it make any declaration expressly bearing upon the subject of removals from office, except in the single provision found in the thirteenth section, which prohibits any promotion, degradation, removal, or discharge of any officer or employé for giving or withholding or neglecting to make any contribution of money or other valuable thing for any political purpose. It is now well settled that, in the absence of constitutional or statutory regulation, the power of appointment carries with it, as an incident, the power to remove. This was first authoritatively determined in respect to appointments vested by the constitution, or by act of congress, in the president, judges of United States courts, and heads of departments, in the case reported as In re Hennen, 13 Pet. 230; the question there being as to the power of a district judge to remove a district court clerk. The doctrine of that case was followed, in an elaborate opinion, in Parsons v. U. S., 167 U. S. 324, 17 Sup. Ct. 880. The civil service act prescribes no tenure of office, and does not deny the power of removal, except in the particular mentioned. The executive rules in force prior to November 2, 1896, in no way undertook to regulate removals; and it is a part of the

history of the country that removals were constantly made, at the will of the appointing power, down to the promulgation of the amended rules of November 2, 1896, and those of July 27, 1897. By paragraph 3 of rule 2 of the civil service rules promulgated by President Cleveland November 2, 1896, it was provided that:

"No person in the executive civil service shall dismiss, or cause to be dismissed, or make any attempt to procure the dismissal of, or in any manner change the official rank or compensation of, any other person therein, because of his political or religious opinions or affiliations."

This rule was amended July 27, 1897, by President McKinley, who added a new paragraph, as paragraph 8, in these words:

"No removal shall be made from any position subject to competitive examination, except for just cause, and upon written charges filed with the head of the department, or other appointing officer, and of which the accused shall have full notice, and an opportunity to make defense."

That these authoritative orders of the chief executive have been, or are about to be, most flagrantly violated by the defendant, who is a subordinate executive officer, cannot be, and has not been, denied. But the question contested is the power of a court of equity to prevent such violation by the writ of injunction. This authority is questioned upon two grounds:

1. It is said that the civil service rules, so far as they deny the unrestrained power of removal, are not the law of the land, but are mere executive orders, dependent for their force upon the vigilance and earnestness of the chief executive in compelling his appointees to regard and obey regulations voluntarily imposed by him as a regulation by the appointing power of its otherwise unrestrained liberty of removal. To this contention I am constrained to yield my assent. These rules regulating the power of removal were made by the president, and may be repealed, altered, or amended at his pleasure. Prior to November 2, 1896, no such restraints existed; and, if after that date they came into force, it was alone by virtue of an executive order. Law is not thus enacted, altered, or amended. Law must be an expression of a rule of action by the legislative authority. These civil service rules, so far as they deal with the executive right of removal,—a right which is but an incident of the power of appointment, —are but expressions of the will of the president, and are regulations imposed by him upon his own action, or that of heads of departments appointed by him. He can enforce them by requiring obedience to them on penalty of removal. But they do not give to the employés within the classified civil service any such tenure of office as to confer upon them a property right in the office or place.

2. Another and equally serious objection to the power of this court to grant relief is found in the fact that a court of equity will not, by injunction, restrain an executive officer from making a wrongful removal of a subordinate appointee, nor restrain the appointment of another. This is a general limitation upon the power of courts of equity, regardless of whether the removal is from a federal, state, or municipal office. In Re Sawyer, 124 U. S. 200, 8 Sup. Ct. 482, the jurisdiction of a United States court of equity to restrain by injunction the removal of a public officer was involved, and also its juris-

diction to enjoin a criminal procceding. As to the power to enjoin a threatened removal, Justice Gray, for the court, said:

"It is equally well settled that a court of equity has no jurisdiction over the appointment and removal of public officers, whether the power of removal is vested, as well as that of appointment, in executive or administrative boards or officers, or is intrusted to a judicial tribunal. The jurisdiction to determine the title to a public office belongs exclusively to the courts of law, and is exercised either by certiorari, error, or appeal, or by mandamus, prohibition, quo warranto, or information in the nature of a writ of quo warranto, according to the circumstances of the case, and the mode of procedure established by the common law or by statute."

In support of this conclusion the learned justice cited many cases, —among them: Attorney General v. Clarendon, 17 Ves. 491–498; Tappan v. Gray, 9 Paige, 507–512; Hagner v. Heyberger, 7 Watts & S. 104; Updegraff v. Crans, 47 Pa. St. 103; Cochran v. McCleary, 22 Iowa, 75; Delahanty v. Warner, 75 Ill. 185; Sheridan v. Colvin, 78 Ill. 237; Beebe v. Robinson, 52 Ala. 66; Moulton v. Reid, 54 Ala. 320. To these authorities I may add the following: Muhler v. Hedekin, 119 Ind. 481, 20 N. E. 700; Fletcher v. Tuttle, 151 Ill. 41, 37 N. E. 683; and People v. Canal Board of New York, 55 N. Y. 393.

"The office and jurisdiction of a court of equity, unless enlarged by statute, are limited to the protection of rights of property." In re Sawyer, 124 U. S. 210, 8 Sup. Ct. 487; World's Columbian Exposition v. U. S., 18 U. S. App. 159, 6 C. C. A. 58, and 56 Fed. 654. The distinction between the jurisdiction of courts of law and courts of equity is most rigidly observed in the circuit courts of the United States, and the powers of a circuit court as a court of equity will not be exercised unless a case is made coming under some acknowledged head of equity jurisdiction. In respect to the exercise of equitable jurisdiction over public officers, the court of appeals of New York well expressed the rule in People v. Canal Board of New York, 55 N. Y. 393, when it said:

"A court of equity exercises its peculiar jurisdiction over public officers, to control their action, only to prevent a breach of trust affecting public franchises, or some illegal act, under color or claim of right, affecting injuriously the property rights of individuals. A court of equity has, as such, no supervisory power of jurisdiction over public officials or public bodies, and only takes cognizance of actions against or concerning them when a case is made, coming within one of the acknowledged heads of equity jurisdiction."

The question of the power of a court of equity to restrain removals contrary to the provisions of the executive rules for carrying into effect the civil service act has of late been frequently before the courts. In the case of Wood v. Gary, a case in the superior court of the District of Columbia, not yet reported, where the opinion was by Justice Cox, and in Dudley v. James, 83 Fed. 345, where the opinion was by Judge Barr, and an unreported case, before Judge Rodgers, decided in the circuit court for the district of Western Arkansas, conclusions were reached identical with those I have indicated upon both points of the defense. The same questions arose before Judge Jenkins in Carr v. Gordon, 82 Fed. 373, and in Taylor v. Kercheval (before Judge Baker) 82 Fed. 497, and was by each of those learned judges elaborately considered; and both came to the conclusion that the rules regulating removals in the classified service were mere executive orders, not having the force or effect of law, and that, aside from this, a court of equity will not, by

injunction, prevent a removal from office, or restrain an appointment. A contrary view was taken by Judge Jackson, of the district of West Virginia, in Priddie v. Thompson, 82 Fed. 186, but I find myself unable to concur with the reasoning of that learned judge.

In High, Inj. § 1315, it is said:

"While courts of equity refuse to interfere by the exercise of their preventive jurisdiction to determine questions relating to title to office, they frequently recognize and protect the position of officers de facto by protecting such positions against the interference of adverse claimants."

There are possibly exceptional cases where one, having a vested right to an office, and who is in actual possession, is about to be dispossessed, by force and unlawfully, where equity may, without trying the title to the office, restrain such unlawful interference by a claimant to the office, and compel the latter to resort to legal remedies, and establish in a court of law his title. Certainly this is not such a case, but one clearly falling within the general doctrine announced authoritatively in Re Sawyer, heretofore cited. For the reasons indicated an injunction must be refused. The demurrer will be sustained, and the bill dismissed, with costs.