Jones, Judge,
delivered the opinion of the court:
Plaintiff, a naturalized citizen of the United States, took a competitive civil service examination in August 1939 to qualify for a position with the defendant as Associate Forest Economist. In October 1940 he took an examination for a position as an Assistant Economist. Plaintiff passed both of these examinations and was enrolled on the register of the United States Civil Service Commission and became *556 eligible to such positions, the certificate being subject to the condition that “if appointed, retention in the service will be subject to the appointee passing an investigation to determine suitability, fitness and general qualifications.”
On November 10, 1941, plaintiff was notified in writing by the Economic Defense Board of his probational appointment as Assistant Economist, Grade P-2, effective November 12, 1941, at an annual salary of $2,600, “subject to a favorable report on the character investigation being made by the United States Civil Service Commission.” Plaintiff took the oath of office and entered upon his duties in connection with such agency on November 12, 1941.
The Economic Defense Board later became known as the Board of Economic Warfare, and still later it became the Foreign Economic Administration, and was placed under the Office for Emergency Management. The original establishment and the various changes were by Executive order.
On December 8, 1941, plaintiff was promoted to the position of Associate Economist, Grade P-8, at an annual salary of $3,200, effective December 12, 1941. In February 1942 plaintiff was assigned to a Map Information Unit in the Economic Defense Board in which work he continued until October 1942. On October 14, 1942, while in the employ of the defendant, plaintiff was inducted for military service in the Army of the United States, reporting for duty October 28, 1942, where he served until January 16, 1943, when he was honorably discharged on account of physical disability.
Effective January 19, 1943, plaintiff was restored to his former position, grade, and pay by the Board of Economic Warfare, which position he held until May 8, 1943. On April IT, 1943, he was advised by Robert O. Arnold, Acting Chief, Division of Personnel, Board of Economic Warfare, that his connection with the agency would be terminated effective May 1 on account of unsatisfactory services, but that on account of accumulated annual leave he would remain on the payroll until 3:30 p. m. May 8,1943.
On April 22, 1943, plaintiff protested the dismissal, calling attention to the fact that no specific charges had been preferred in writing, and requesting that he be given an opportunity to receive a reasonable time to answer the alleged *557 charges and also a hearing thereon. On April 30, 1943, the acting personnel officer wrote plaintiff setting out distinct and specific charges. On May 5, 1943, plaintiff' replied, attaching affidavits and other documents and again requesting a personal hearing. On May 7, the defendant sent plaintiff a formal notice advising him that his employment would be terminated as of May 8, 1943.
On May 6, 1943, plaintiff wrote the United States Civil Service Commission protesting the procedure and dismissal.
The investigation as to plaintiff’s suitability, fitness, and general qualifications in connection with his original appointment had not been completed when plaintiff went into the military service. It was reached by the investigator about that time and was suspended while plaintiff was in the army. The investigation was resumed after plaintiff had returned to the agency and he was given a personal interview on June 24, 1943. As a result of the investigation the Commission found that plaintiff was unsuitable for Government employment and cancelled his existing eligibilities. He was notified of this action on September 15,1943.
As a result of this investigation and determination, had plaintiff still been an employee of the defendant, the certificate for his original employment would have been withdrawn and the agency ordered to remove him.
On July 24, 1943, plaintiff brought an action in the United States District Court against the Director, Chief of the Personnel Division, and other officers of the agency for restoration to his former position and for compensation from May 8,1943, to date of his reinstatement. The basis of the action was that he was a discharged soldier and that under the provisions of the statute his discharge was illegal. The defendant pleaded that the complaint failed to state a claim upon which relief could be granted. The District Court dismissed the complaint.
Plaintiff wrote a letter to the President on September 23, 1943, complaining of the defendant’s actions and stating that he had been dismissed from his position contrary to Civil Service rules. The letter was transmitted to the Civil Service Commission. The Civil Service Commission granted a hearing to plaintiff on October 18,1943, at which plaintiff *558 appeared and introduced letters and documents relating to bis suitability. The Commission reaffirmed its previous finding and so advised plaintiff on December 21, 1943.
1 Upon further representations by plaintiff the Civil Service Commission on March 10, 1944, restored plaintiff to limited eligibility for appointment, the limitation being “that his name is to be certified for consideration for appointment to positions of a nonsupervisory research character only, preferably to positions not involving contact with the public.”
Effective September 25, 1944, plaintiff was appointed by the Foreign Economic Administration to the position of Foreign Affairs Economist, in Grade P-4, at a salary of $3,800 per annum. Plaintiff took the required oath and thus again became an employee of the defendant agency.
Plaintiff sues for the amount of the salary that would have been paid him between May 8, 1943, and September 25, 1944, had he not been discharged from the agency.
Defendant takes the position that plaintiff’s cause of action necessarily involves title to the office and that this court does not have jurisdiction to render a money judgment until that issue has been determined. It cites the cases of Hart v. United States, 91 C. Cls. 308; Krueger v. United States, 83 C. Cls. 412; Goodwin v. United States, 76 C. Cls. 218; O'Neil v. United States, 56 C. Cls. 89. However, in all of these cases the position in question had been filled. In the case at bar the place was not filled. A noncivil service employee graded P-2 for pay purposes, was placed in charge of plaintiff’s desk and apparently did the work which he had been doing, but the place was not officially filled.
Plaintiff asserts that for this reason he was not in position to try title to the office, but that out of abundance of Caution he did file a suit which was dismissed by the United States District Court for the District of Columbia on the ground that plaintiff’s petition did not state a cause of action.
This case turns on the question of whether the statutory procedure was followed in effecting plaintiff’s discharge and whether he can maintain a suit for his salary for the period until the discharge was made effective in a legal way.
Plaintiff asserts that his discharge was illegal and was in *559 effect no discharge at all because the matter was determined without first setting out the charges in specific and definite form, and while specific charges were later made, they were made after the matter had been determined and consideration was not given to the affidavits and documents which he presented.
Section 6 of the Act of August 24, 1912, 37 Stat. 539, 555 (Sec. 1, Civil Service Rule XII), provides
That no person in the classified civil service of the United States shall be removed therefrom except for such cause as will promote the efficiency of said service and for reasons given in writing, and the person whose removal is sought shall have notice of the same and of any charges preferred against him, and be furnished with a copy thereof, and also be allowed a reasonable time for personally answering the same in writing; * * *
On April 17, 1943, the Acting Chief of the Division of Personnel advised plaintiff that his connection with the agency would be terminated effective May 1 on account of unsatisfactory service, but made no specific charges of any kind as required by the statute.
Five days later the plaintiff protested the dismissal, calling attention to the fact that no specific charges had been preferred as required by statute and asking for a hearing. Five days later, on April 30, 1943, the personnel officer wrote plaintiff setting out distinct and specific charges, but in the very letter stated flatly that his services would be ended. Plaintiff replied to these charges on May 5, setting out documents and affidavits in answer thereto. This letter reached the Board of Economic Warfare, according to the stamp on the back, on May 7, 1943, at 3:47 p. m. A letter the same day again notified plaintiff that his services would be ended and made no reference whatever to the affidavits or answer or charges that had been submitted. It is, of course, physically possible that the agency’s letter of the same date could have been written after plaintiff’s letter and supporting documents had been received in the late afternoon of the same day, but to anyone at all familiar with the customary method of handling, reference, and reference of letters in the bureaus of government, this seems highly improbable. It borders on *560 the impossible. The record precludes any other reasonable conclusion than that no consideration whatever was given to plaintiff’s answer and justifies a finding that it was not even seen by the personnel officer before the action was made final.
In a letter to the Board of Economic Warfare dated July 22, 1944, the United States Civil Service Commission took the position that the law had not been complied with, and the Commission’s letter of protest uses the following language:
It is true, as you state, that Mr. Elchibegoff had opportunity to reply to the charges. However, as stated in our letter of June 23, 1944, in each of the letters which you furnished Mr. Elchibegoff you advised him that he was being separated. In other words, a decision.had already been made to discharge him and the date of discharge was determined. Under the circumstances such opportunity for reply as Mr. Elchibegoff had was not in harmony with tire provisions and purposes of Civil Service Rule XII.
When all the facts of this case are taken into consideration it is difficult to find that there was a real compliance with the terms of the law and the rules of the United States Civil Service Commission.’ It is hardly a technical compliance, much less a compliance with the sweep and spirit of the law. The law was enacted for the protection of the employees and to assure a fair consideration of their rights. It does not in any way interfere with the power of termination of the services that are unsatisfactory if a real reason can be assigned for the action that is taken. To construe the three letters as a compliance with the law when each of them contains the statement that the matter has already been determined is almost to make a mockery of the provisions of the law. It is an almost exact parallel to the age-old classic illustration of the justice of the peace who announced at the conclusion of the testimony that he would take the case under consideration and render judgment for plaintiff the following morning.
It is unfortunate that the matter was handled in the way it was, because the Commission did finally determine that plaintiff was not suited to the work he was doing. After the date of that finding we think plaintiff’s right to recover compensation was foreclosed, but the whole effort of the *561 personnel officer of the Bureau of Economic Warfare indicates a determination to end the services before that finding without any real consideration for the rights of plaintiff. In an effort to defend this action counsel for the defendant invokes the “letter that killeth” rather than “the spirit that giveth life.”
The plaintiff asserts that he is entitled to compensation from May 8, 1943, until the time he was restored to duty in September 1944, or at least for one year, because of the provision of the Veterans’ Act which requires one year of employment following discharge from military service except where dismissal is for cause.
Plaintiff was never given a certificate entitling him to a permanent appointment as Assistant or Associate Economist. The certificate was a conditional one and the appointment was necessarily probationary. Plaintiff’s original employment was subject to an investigation as to suitability, fitness and general qualifications. When this investigation was completed the finding was adverse and this finding was made effective as of August 24, 1943.
As a result of this investigation and determination had plaintiff still been an employee of the defendant the certificate for his original employment, would have been withdrawn and the agency ordered to remove him. This finding dates back to the original appointment in so far as plaintiff’s right to continued employment after August 24, 1943, is concerned.
In view of these facts we think the plaintiff had no rights after August 24, 1943.
The defendant raised the question of laches. However, it seems in going over the entire record that the plaintiff allowed no grass to grow under his feet. If there ever was a case in which a man was active in trying to secure his rights, the plaintiff was in this instance. He protested all over the lot. He wrote the Civil Service Commission; he wrote the Bureau of Economic Warfare; he wrote the President; he insisted on reinstatement; he filed a suit in the United States District Court and finally, after exhausting all other avenues of protecting his rights he filed a suit in the United States Court of Claims.
*562 In the circumstances we hold that the Civil Service laws and regulations were not complied with until August 24, 1943, and that plaintiff is entitled to recover his salary for the period between May 8,1943, and August 24,1943, a total of $1,127.20.
It is so ordered.
Whitaker, Judge; and Littheton, Judge, concur.