Irving NADELHAFT

v.

The UNITED STATES.

No. 209-53.

United States Court of Claims.
June 7, 1955.

Madden and Littleton, JJ., dissented.

Harry I. Rand, Washington, D. C., for plaintiff.

Thomas H. McGrail, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

On October 9, 1950, plaintiff was given a probational appointment as a physicist in the National Bureau of Standards. On August 20, 1951 he was suspended without pay, pursuant to a finding of the Loyalty Board of the Fourth United States Civil Service Region, Civil Service Commission, that there was "reasonable doubt as to his loyalty to the United States." On April 30, 1952 the Loyalty Review Board of the Civil Service Commission reversed this ruling, and on May 21, 1952 plaintiff was notified he would be restored to duty. He reported for duty on May 26, 1952. On the following day he resigned.

He sues for his pay between the date of his suspension on August 20, 1951 and May 26, 1952.

Under the Lloyd-La Follette Act of 1912, 37 Stat. 539, 555, as amended by the Act of June 10, 1948, 62 Stat. 354, 5 U. S.C.A. § 652, a person in the classified civil service who has been improperly removed or suspended from his office is entitled to recover his compensation during the period of his unlawful removal or suspension. The question presented is whether or not this section is applicable to a person holding a probational appointment. Sections 6(a) and (b) (1) of the Act of June 10, 1948, supra, are quoted in part in the note below.[1]

---

1. "Sec. 6. (a) No person in the classified civil service of the United States shall be removed or suspended without pay therefrom except for such cause as will promote the efficiency of such service and for reasons given in writing. Any person whose removal or suspension without pay is sought shall (1) have notice of the same and of any charges preferred against him; (2) be furnished

Exhibit 1 attached to the stipulation of facts shows that plaintiff's appointment was "subject to investigation" and also "probationary period of one year required."

We are of the opinion that, since the appointment was made subject to investigation, it might be cancelled or suspended if the investigation turned up anything that made questionable plaintiff's permanent appointment to the position. Likewise, the condition "probationary period of one year required" makes it necessary for a person, within that year, to prove himself acceptable for permanent appointment. If within that year something develops that raises a doubt about the desirability of his permanent appointment, it justifies the agency in holding up the permanent appointment, and where the facts justify it, to remove plaintiff from the payroll, until it can be determined whether or not the question raised makes his permanent appointment inadvisable.

In short, we are of the opinion that a probationary appointee acquires no right to the office, that is to say, a right protected by the Lloyd-La Follette Act, as amended. His right to the office and protection by this Act only accrues after the probationary period has expired and his appointment becomes permanent.

Subsection (a) of section 6 of the 1948 Act, supra, accords the protection of that Act only to a "person in the classified civil service". We do not think a person gets within the classified civil service so long as his appointment is probationary and subject to investigation.

■ The original Civil Service Act provided for the appointment of a Civil Service Commission, and required them to make rules for carrying the Act into effect. Among the rules which they were required to adopt was that "there shall be a period of probation before any absolute appointment or employment aforesaid." The rules of the Civil Service Commission now in effect also provide for probationary appointments. These rules undoubtedly have the force and effect of law because of the broad powers conferred upon the President by Revised Statutes, section 1753, 5 U.S.C.A. § 631, to make such rules, and by him delegated to the Civil Service Commission.

Section 2.113 of 5 Code of Federal Regulations, issued by the Civil Service Commission, provide:

"* * * The agency shall utilize the probationary period as fully as possible to determine the fitness of each employee and shall terminate his services during such period if

---

with a copy of such charges; (3) be allowed a reasonable time for filing a written answer to such charges, with affidavits; and (4) be furnished at the earliest practicable date with a written decision on such answer. No examination of witnesses nor any trial or hearing shall be required except in the discretion of the officer or employee directing the removal or suspension without pay. Copies of the charges, the notice of hearing, the answer, the reasons for removal or suspension without pay, and the order of removal or suspension without pay shall be made a part of the records of the proper department or agency, as shall also the reasons for reduction in grade or compensation; and copies of the same shall be furnished, upon request, to the person affected and to the Civil Service Commission. This subsection shall apply to a person within the purview of section 14 of the Veter-

ans' Preference Act of 1944, as amended, only if he so elects.

"(b) (1) Any person removed or suspended without pay under subsection (a) who, after filing a written answer to the charges as provided under such subsection or after any further appeal to proper authority after receipt of an adverse decision on the answer, is reinstated or restored to duty on the ground that such removal or suspension was unjustified or unwarranted, shall be paid compensation at the rate received on the date of such removal or suspension, for the period for which he received no compensation with respect to the position from which he was removed or suspended, less any amounts earned by him through other employment during such period, and shall for all purposes except the accumulation of leave be deemed to have rendered service during such period. * * *" 5 U.S.C.A. § 652.

he fails to demonstrate fully his qualifications for continued Federal employment."

In the case at bar a serious question arose as to plaintiff's loyalty to the United States. Until this question was settled, of course plaintiff was not entitled to a permanent appointment. Nor was he entitled to continue to work for the Government. Under the above rule, the agency was required to "terminate his services during such period if he fails to demonstrate fully his qualifications for continued Federal employment." When the question arose as to his loyalty, the agency was authorized by this rule to terminate his services. Considering the question raised, we think the agency was justified in immediately terminating plaintiff's services before his appeal to the Loyalty Review Board had been acted upon. When that Board did act, the agency was required to restore plaintiff to duty, which it did.

Section 9.101(b) of 5 C.F.R. prohibits the removal of employees "except for such cause as will promote the efficiency of the service and in accordance with the procedure prescribed in section 9.102," but this was expressly made inapplicable to probational or temporary appointments in the competitive service. This provision is a repetition of the provision of the Lloyd-La Follette Act, as amended, supra.

The procedure prescribed by section 9.102, which is also a repetition of the provisions of the Lloyd-La Follette Act, as amended, supra, by its terms is made applicable to persons in the competitive service, that is to say, the classified civil service, "unless he is serving a probationary or trial period." The procedure therein prescribed for the removal of an appointee is made inapplicable to a probationary appointee. His removal is provided for in the next succeeding section, being 9.103. This provides:

"(a) Any person serving a probationary or trial period shall be given a full and fair trial in the perform-

ance of the duties of the position to which appointed. If the performance of his duties or his conduct is not satisfactory to the agency his services shall be terminated by notifying him in writing of the reasons for his separation and of its effective date. * * *"

Thus, the only thing necessary to do to remove a probationary appointee is merely to tell him why you are removing him. The provision for notice of the charges, for time to file an answer and affidavits, and for a written decision on the dispute, is inapplicable to a probationary appointee.

It would seem from these provisions that a probationary employee is not entitled to the protection against removal accorded persons in the competitive service by the Lloyd-La Follette Act.

If he is not accorded this protection, then the provision giving him the right to claim compensation for unjustified removal would seem inapplicable to him.

Section 6(a) and (b) (1) of the Act justifies this conclusion. Subsection (a) provides for the filing of charges against an employee, an opportunity for him to answer the charges and to file affidavits, and for a decision on the charges. Subsection (b) (1), giving the right to the pay of which he has been deprived by an unlawful discharge, applies only to a person who files an answer to the charges filed against him. If the filing of charges against a probationary employee is not required, as sections 9.101 to 9.103 of 5 C.F.R. say, then section 6(b) (1) of the Act has no application to him, and gives him no right to recover.

So, it seems to us that both in reason and according to the law and regulations a probationary appointee may be removed at any time until he has demonstrated his fitness to hold the position; or, if the agency is not altogether satisfied about the truth of the question raised as to his fitness, they may suspend him until that question has been answered, and this without liability to him under section 6(b) (1) of the Lloyd-La Follette Act.

**934**

Now, it must be confessed that if some of the regulations of the Civil Service Commission are read in connection with 5 U.S.C.A. § 658, defining the expression "classified civil service," then section 6(b) (1) of the Lloyd-La Follette Act would be applicable to probationary employee; but this Act and these regulations do not relate specifically to the discharge of employees, whereas the ones we have quoted and relied on above do relate specifically to them. The right of a suspended employee is the question before us.

The opinion that we have expressed is not in conflict with our opinion in Elchibegoff v. United States, 106 Ct.Cl. 541. We held in that case that a probationary appointee was subject to dismissal as soon as the investigation, subject to which he was appointed, disclosed matter indicating that his permanent appointment was inadvisable.

In Bailey v. Richardson, 86 U.S.App. D.C. 248, 182 F.2d 46, affirmed, 341 U.S. 918, 71 S.Ct. 669, 95 L.Ed. 1352, there was involved the dismissal of an employee who had been in the classified civil service, but who had been separated therefrom due to a reduction in force and who had been reinstated, subject to the condition that she might be removed if the investigation disclosed disqualification. The investigation developed that there were reasonable grounds to believe that the plaintiff was disloyal to the United States and, accordingly, she was removed. The majority of the court held that since she had been appointed subject to investigation, she was not in the classified civil service until after survival of the investigation.

It is implicit from the opinion in Borak v. Biddle, 78 U.S.App.D.C. 374, 141 F.2d 278, that a person appointed on probation was not in the classified civil service and, therefore, not entitled to the protection accorded by the Lloyd-La Follette Act. Cf. Friedman v. Schwellenbach, 81 U.S.App.D.C. 362, 159 F.2d 22.

We are of the opinion plaintiff was legally suspended and that he is not entitled to recover. His petition will be dismissed.

JONES, Chief Judge, and LARAMORE, Judge, concur.

MADDEN, Judge (dissenting).

The plaintiff, holding a probational appointment as a physicist with the National Bureau of Standards, was suspended without pay on loyalty grounds. He was, after some eighteen months' suspension, restored to duty for the reason that his suspension was unwarranted. The opinion of the court says that under the Lloyd-La Follette Act, as amended by the Act of June 10, 1948, 62 Stat. 354, 5 U.S.C.A. § 652, a person "in the classified civil service" who has been so suspended and so reinstated is entitled to be paid for the period of his suspension. As the question is stated, our only problem is to determine whether the plaintiff was "in the classified civil service."

In 5 U.S.C.A. § 658, it is said:

"The expression 'classified civil service' as the same occurs in acts of Congress shall, unless otherwise provided, be construed to include all persons who have been or may be given a competitive status in the classified civil service, with or without competitive examination, by legislative enactment, or under the civil service rules promulgated by the President, or by Executive orders covering groups of employees with their positions into the competitive classified service or authorizing the appointment of individuals to positions within such service." [Italics added.]

If, then, the plaintiff was given a competitive status under civil service rules promulgated by the President, he was a person in the "classified civil service."

Civil Service Rule III, relating to the question of the "acquisition of competitive status" as that rule was at the time of the events involved in this suit, said:

"Sec. 3.1 Classes of persons who may acquire status.—(a) A person may acquire a competitive status by

probational appointment through competitive examination, or by statute, Executive Order, or this Rule."

The Civil Service Regulations in Part IV—General Provisions, said:

### Definitions

"4.301 * * *

(5) Competitive status means a status which permits a person to be promoted, transferred, reassigned and reinstated to positions in the competitive service without competitive examination, subject to the conditions prescribed by the Civil Service rules and regulations for such noncompetitive actions. *A competitive status* is acquired *by probational appointment* through competitive examination, or may be granted by statute, Executive Order, or the Civil Service rules." [Italics added.]

Section 9.101(b) of the Civil Service Regulations (Part 9 of 5 Code of Federal Regulations) says:

"Employees serving under other than probational or temporary appointments in the competitive service * * * shall not be removed, suspended, or demoted except for such cause as will promote the efficiency of the service and in accordance with the procedure prescribed in section 9.102."

As the Government asks us to read this regulation it would say:

"Employees in the competitive service, except those who are not in the competitive service, shall not be removed, etc."

Again in section 9.102 of 5 C.F.R. it is written:

"One of the following procedures shall be followed in connection with the * * * suspension * * * of any permanent or war service indefinite employee in the competitive service, unless he is serving in a probationary or trial period."

This would be made to read:

"One of the following procedures shall be followed in connection with the * * * suspension of any * * * employee in the competitive service, unless he is not in the competitive service * * *."

In Civil Service Commission Regulations, Section 20.4(c), 5 C.F.R. (1949 Supp.), where retention rights in cases of reductions in force are defined, we find—

"(2) Group II—Career-Conditional. *In the competitive service,* this group includes career-employees who are conditional because they are *serving probationary periods,* * * *." [Italics added.]

Congress authorized the President to define who should be in the "classified civil service." The President, acting through the Civil Service Commission, did so in express terms, which included probational employees. The civil service rules in the numerous instances recited above repeated that definition, either in express terms, or by necessary implication. Nowhere do they say the contrary. To be sure, Section 9.103(a) of 5 C.F.R. does not accord to probationary employees all the rights to which persons in the "classified civil service" are entitled under the Lloyd-La Follette Act. So far as we know, that is an error of the Civil Service Commission, but that error is not the subject of this suit.

If the question were as single as the opinion of the court has stated it, I would have no hesitation in answering it. The Civil Service Commission has repeatedly said that probational employees are in the classified civil service, that it had the statutory power to place them there, and that is the end of it.

I am troubled by a somewhat narrower question of statutory construction. Section 6(b) (1) of the Lloyd-La Follette Act, quoted in the opinion of the court, is the back-pay section here involved. It does not say, as the opinion of the court suggests "any person in the classified civil service." It says:

"Any person removed or suspended without pay under subsection (a) who, after filing a written answer to

the charges as provided under such subsection or after any further appeal to proper authority after receipt of an adverse decision on the answer, is reinstated * * *"

is entitled to back pay.

Was the plaintiff suspended under subsection (a)? If he was, as the repeated Civil Service Commission statements referred to above say he was, in the classified civil service, he could not have been suspended at all except under subsection (a). Subsection (a) says:

"No person in the classified civil service of the United States shall be removed or suspended without pay therefrom except for such cause as will promote the efficiency of such service * * *."

Whether the suspension is for inefficiency, loyalty, or other cause, it must be accomplished under subsection (a). The plaintiff was served with charges, answered, appealed to proper authority and was reinstated. The factual requisites of subsection (b) were fulfilled. If the plaintiff had been suspended for inefficiency, or any cause other than loyalty or security, he, being a probational employee, would not, as the civil service rules were then written, have had the rights accorded by subsection (a) to file an answer and receive a copy of the decision. As I have said above, this rule seems to have been in flat contradiction of subsection (a) which guaranteed these rights to employees in the classified civil service, since the Commission, pursuant to other legislation, was required to specify what employees were in the classified civil service and had expressly and repeatedly placed probational employees in it.

But whether or not the civil service regulation denying these rights to a probational employee was void because it contradicted the statute, Executive Order 9835, of March 21, 1947, U.S.Code Cong.Service 1947, p. 1997, setting up the loyalty program, said, in Part II, Section 4:

"The rights of hearing, notice thereof, and appeal therefrom shall be accorded to every officer or employee prior to his removal on grounds of disloyalty, *irrespective of tenure, or of manner, method,* or *nature* of *appointment,* but the head of the employing department or agency may *suspend* any officer or employee at any time pending a determination with respect to loyalty." [Italics added.]

It will be observed that this Executive order relating to loyalty had been in effect for more than a year when section 6(b) was enacted in June 1948. I do not think that Congress intended that civil servants, having the express right to notice, hearing, appeal and, if the appeal was successful, reinstatement, and all this regardless of their tenure of office, should be denied the only benefit which section 6(b) provided, *viz.*, back pay.

I would hold that the plaintiff is entitled to recover.

LITTLETON, Judge, joins in the foregoing dissent.