Helen I. WATSON

v.

UNITED STATES.

No. 49895.

United States Court of Claims.

June 4, 1958.

Whitaker and Laramore, JJ., dissented.

Rees B. Gillespie, Washington, D. C., for plaintiff.

Frances L. Nunn, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

LITTLETON, Judge.

On October 14, 1957, the Supreme Court granted plaintiff's petition for writ of certiorari and vacated the judgment of this court (137 Ct.Cl. 557, 581), remanding the case to us for consideration in the light of the decision of the Supreme Court in Service v. Dulles, 1957, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed. 2d 1403. See 355 U.S. 14, 78 S.Ct. 18, 2 L.Ed.2d 23, and order of this court dated December 4, 1957.

Miss Watson sued in the Court of Claims to recover salary allegedly due her from April 25, 1947, to October 27, 1950, on the ground, among others, that her discharge from her civilian position with the Army on April 25, 1947, was procedurally defective. At the time of plaintiff's discharge she was serving a one-year probationary period in the position of clerk-typist and the discharge occurred after approximately five months of service. Her notice of discharge advised her that her conduct had not been satisfactory to the agency but it did not state the agency's reasons for concluding that her conduct was not satisfactory. Such reasons were communicated to her some six months after her separation from the service.

It is conceded that the Civil Service Regulation appearing at 5 C.F.R. § 27.7 (d) (1946 Supp.), and War Department Civilian Personnel Regulation No. 60 were both applicable to the discharge of plaintiff as a probationary employee. In

the decisions of this court on July 12, 1956 and March 6, 1957, the majority of the court held that plaintiff acquired no rights cognizable by this court under either regulation, and that she therefore had no claim against the Government for salary lost as a result of her discharge carried out in violation of such regulations.

The Civil Service Regulation applicable to plaintiff as a probationary employee (5 C.F.R. 27.7(d), 1946 Supp.) provided that where a probationer is to be discharged for unsatisfactory conduct or performance of duties prior to the completion of the probationary period, he shall be so notified in writing and be provided with a statement of the reasons why his conduct or performance has been unsatisfactory. War Department Regulation No. 60 also required that War Department civilian personnel should, prior to discharge, receive a notice containing a statement of the reasons for the separation. In addition, the War Department Regulation required that the employee be given an opportunity to reply to the statement of charges.

The Civil Service Regulation in suit was issued pursuant to authority granted in the Civil Service Act of 1883, 22 Stat. 403, 5 U.S.C.A. § 632 et seq., and section 1753 of the Revised Statutes, 5 U.S.C.A. § 631. The War Department Regulation involved herein was issued pursuant to authority granted to department heads in section 161 of the Revised Statutes, 5 U.S.C.A. § 22.

The majority of this court held that because the Civil Service Act of 1883 under which the Civil Service Regulation in suit was promulgated, contained no express restriction on the power of an agency head to remove a probationary employee, the regulation of the Commission which was designed to impose such a restriction did not have the force and effect of law, and the probationary employee discharged in violation of such a regulation did not acquire a right of action against the United States cognizable in this court. With respect to the War Department Regulation No. 60 issued pursuant to Revised Statutes, section 161, the majority of this court held that the regulations issued under that statute were merely housekeeping regulations promulgated for the guidance of the officers and agents in the various Government departments, and that the violation of discharge procedures contained in such regulations gave to affected employees no enforceable rights.

In the case of Service v. Dulles, supra, Mr. Service sought a declaratory judgment from the District Court that his discharge from the Department of State was procedurally defective and therefore invalid. The Supreme Court found that two departmental regulations [1] were applicable to the discharge and that they had in fact been violated. The 1949 departmental regulation was issued pursuant to Executive Order No. 9835 (March 21, 1947, 3 C.F.R. 129, 1947 Supp.), 5 U.S.C.A. § 631 note, and the 1951 departmental regulation was issued pursuant to Executive Order No. 10241 (April 28, 1951, 3 C.F.R. 431, 1951 Supp.), U.S. Code Cong. and Adm. Service 1951, p. 1041. Both Executive Orders prescribed procedures for the administration of a Federal employees loyalty program including investigation and discharge procedures designed to protect Government employees. The legislative authority for the promulgation of the two executive orders was the Civil Service Act of 1883, 22 Stat. 403, and section 9 of the Act of August 2, 1939 (To Prevent Pernicious Political Activities), 53 Stat. 1147, 1148, 5 U.S.C.A. § 118i. The loyalty-security executive order of 1947, as amended, authorized department heads to make proper regulations for the administration of the program, and it was pursuant thereto that the Secretary of State issued the two regulations involved in the Service case. The two State Department regulations imposed numerous restrictions

[1] Regulations and Procedures relating to Loyalty and Security of Employees, U. S. Department of State.

(similar to those contained in the 1947 Executive Order) on the right of the Secretary of State to discharge employees of his agency for loyalty and security reasons, none of which restrictions appear in the enabling legislation, i. e. the 1883 Civil Service Act and the 1939 Pernicious Political Activities Act. Furthermore, Part VI of the 1947 Executive Order provided that the order should not be applicable to persons summarily removed under statutes conferring on department heads the power of summary removal. In the Service case, the so-called McCarran Rider (section 103, Public Law 188, 82d Cong., Oct. 22, 1951, 65 Stat. 581) gave to the Secretary of State absolute discretion to terminate summarily the employment of any State Department employee whenever the Secretary should deem such termination necessary or advisable in the interest of the United States. This authority to make summary dismissals was reenacted in subsequent appropriation acts applicable to the State Department and was in existence at the time of the discharge of Mr. Service.

Despite this grant of absolute discretion to make summary discharges contained in the McCarran Rider, the State Department took the position, which was communicated to Congress (S. Rept. No. 2108, 81st Cong.2d Sess. 15–16), that discharges for reasons of loyalty would continue to be subject to the procedural limitations of the Department's regulations issued under the Loyalty Executive Orders. The Supreme Court pointed out that Congress had been advised that the Secretary of State had seen fit to limit by regulations the absolute discretion conferred upon him in the McCarran Rider, and that Congress had continued to reenact the McCarran Rider without change for several succeeding years. The Supreme Court accordingly held that the State Department loyalty discharge regulations were applicable to McCarran Rider discharges to the extent that such discharges were based on loyalty or security grounds, and that since Mr. Service was discharged on loyalty grounds,

the regulations were applicable to him. The Supreme Court also pointed out that although Mr. Service could have been discharged under the provisions of the Foreign Service Act of 1946, as amended, 22 U.S.C.A. § 801 et seq., the Secretary of State had elected to proceed under the authority of the McCarran Rider. It was the position of the Government in the Service case that because of the McCarran Rider grant of absolute discretion, the Secretary of State was at liberty to disregard his own departmental regulations relating to loyalty-security discharges if he deemed such a course advisable. Citing United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681, the Supreme Court held that while a department head may have absolute discretion under a Federal statute to discharge an employee, if that department head has by regulations restricted such discretion by prescribing procedures to be followed in discharging employees, he must follow his regulations as long as they remain in effect:

> "While it is of course true that under the McCarran Rider the Secretary was not obligated to impose upon himself these more rigorous substantive and procedural standards, neither was he prohibited from doing so, as we have already held, and having done so he could not, so long as the Regulations remained unchanged, proceed without regard to them." Service v. Dulles, 354 U.S. 363, at page 388, 77 S.Ct. 1152, at page 1165, 1 L.Ed.2d 1403.

The Supreme Court held that the discharge of Mr. Service in violation of the two departmental regulations was invalid.

We are of the opinion that the principles enunciated by the Supreme Court in the Service case are applicable to the issues in the instant case and that the distinctions between the two cases suggested by defendant are without merit.

Defendant first urges that the Service case arose out of loyalty proceedings,

whereas Miss Watson was merely a probationary employee who was separated for unsatisfactory conduct during the probational period. Defendant does not state what it makes of this distinction, and it would appear that not much could be made of it. The holding of the Supreme Court in the Service case that departmental regulations relative to discharges have the force and effect of law so long as they remain in effect, had nothing to do with the status of the employee covered by those regulations— that is, whether the employee was a probational employee, an employee who had acquired permanent Civil Service status, or a Foreign Service officer.

Defendant points out that in the Service case there was no attempt on the part of the Department of State to comply with its own regulations, but that in the Watson case the Army ultimately corrected any deviation from its own procedural regulations and those of the Civil Service Commission by giving plaintiff a full statement of the reasons for her dismissal and an opportunity to reply. The regulations which were violated in Miss Watson's case both provided that *prior* to making the discharge effective a probationary employee must be given a full statement of the reasons why the conduct in question was unsatisfactory. Miss Watson's discharge was made final and effective without giving her a statement of such reasons as required by the Civil Service Regulations and by the War Department Regulations. The giving of such reasons seven months after the discharge was made effective is not compliance with regulations which require that the reasons be given prior to the effective date of the discharge.

Defendant states that Service, as a permanent Civil Service employee and a Foreign Service officer, was entitled to all the protections of the Foreign Service Act of 1946, the Lloyd-La Follette Act of 1912, 5 U.S.C.A. § 652, and the Civil Service Act of 1883. Defendant argues that because plaintiff Watson was not in the classified Civil Service, but was merely a probationary employee, she was not entitled to any statutory protection except that provided by the Civil Service Act of 1883, and defendant urges that the 1883 statute "concededly has not been violated." It is true that no provision of the Civil Service Act of 1883 was violated in the Watson case any more than it was violated in the Service case. Neither were any provisions of the Lloyd-La Follette Act or the Foreign Service Act of 1946 violated in the Service case, inasmuch as Mr. Service was not discharged under the provisions of those Acts, but rather under the McCarran Rider. It is also a fact, ignored by defendant herein, that neither Service nor Watson was claiming a violation of any procedural rights guaranteed by any statute whatever, but rather the violation of rights guaranteed by departmental regulations. If the regulations issued under the executive orders, which in turn were issued under the 1883 Civil Service Act, in the case of Service had the force and effect of law, and a discharge carried out contrary to the provisions of these regulations was therefore an invalid discharge, it is difficult to understand why the Watson discharge in violation of another regulation issued under the same 1883 Act, was not equally invalid.

Finally, the defendant argues that a reversal of the present majority opinion in the Watson case will "frustrate entirely the Federal employment program by conferring classified Civil Service status upon an employee for all practical purposes as soon as he is hired without giving the agency any opportunity to see if the employee is suitable for the position and to rid itself of an employee found not to be qualified before it assumes all the obligations attendant upon permanent status." Upholding plaintiff's rights under a regulation which requires that a probational employee be furnished with a statement of the reasons why his conduct or services were unsatisfactory prior to discharging him, would merely be a holding that an employing agency must comply with a regulation which it considered important enough to promul-

gate in the first place. It is not this court which requires that Federal probational employees be advised, prior to discharge, of the reasons why their conduct or the performance of their duties is unsatisfactory. It is the Civil Service Commission and the War Department which have made such a requirement, and so long as they permit that requirement to remain in effect by duly promulgated regulations issued pursuant to statutory authority and not conflicting in any way with the statutes under which they are issued, those regulations have the force and effect of law under the holding of the Supreme Court in the Service case. If the violation of a departmental dismissal regulation issued pursuant to the 1883 Civil Service Act was good for injunctive relief in the Service case, the violation of a Civil Service dismissal regulation issued under the same statute in the instant case would certainly seem to be valid grounds for a claim for pay in the Court of Claims which court has jurisdiction to render money judgments in cases arising under the regulations of an executive department. 28 U.S.C. § 1491. The War Department Regulation issued pursuant to Revised Statutes, section 161, would seem to be on the same footing, and its violation in connection with Miss Watson's discharge also gave rise to a claim arising under a regulation of an executive department.

We are of the opinion that on the basis of the decision of the Supreme Court in the Service case, we must grant plaintiff's motion for summary judgment herein.

The order of July 12, 1956 denying plaintiff's motion for summary judgment and dismissing the petition is vacated and withdrawn; the orders of March 6, 1957 denying plaintiff's motion for a new trial and her motion for leave to amend the petition, are also vacated and withdrawn. Plaintiff's motion for leave to amend the petition is granted. Plaintiff's motion for summary judgment is granted and judgment is entered to that effect with the amount of recovery to be determined pursuant to Rule 38(c) of the Rules of this court, 28 U.S.C.

It is so ordered.

JONES, Chief Judge, and MADDEN, Judge, concur.

WHITAKER, Judge (dissenting).

Before discussing the case in the light of the opinion in Service v. Dulles, supra, I think it might be well to review the prior action of this court in the case.

On July 12, 1956, we dismissed plaintiff's petition, because, we said, the Civil Service regulations, requiring that a probationary employee shall be "notified in writing of the reasons for his separation and of its effective date," had been complied with. Plaintiff was notified that she was being removed because "your conduct—during the probational period of employment in this Installation as a Clerk-typist, CAF–2, $1,954.00 per annum—has not been satisfactory to the Agency." We said this was all that was required in the case of a probationary employee, because such an employee was not in the classified civil service and, hence, was not entitled to the protection of the Lloyd-La Follette Act, as amended. We had so held in Nadelhaft v. United States, 131 F.Supp. 930, 132 Ct.Cl. 316. See also Bailey v. Richardson, 86 U.S.App.D.C. 248, 182 F.2d 46; Borak v. Biddle, 78 U.S.App.D.C. 374, 141 F.2d 278.

We said further, that the fact that Army personnel regulations had not been complied with did not give the plaintiff the right to a money judgment against the United States. We said that only the Civil Service Commission was empowered to issue regulations to carry into effect the Civil Service Act of 1883 (22 Stat. 403) and the Lloyd-La Follette Act (37 Stat. 555), as amended, and that since its regulations had been complied with, it was immaterial whether or not Army personnel regulations had been complied with. We said, "The United States is not liable for a money judgment for the violation of any regulation that does not have Congressional sanction.

Only Congress can create, either directly or indirectly, a cause of action against the United States."

Because the Army regulations did not have Congressional sanction, we said that failure to comply with them prior to her discharge did not give plaintiff the right to a money judgment.

Plaintiff filed a motion for a new trial, and a motion for leave to file an amended petition, so as to assert alleged rights arising under Revised Statutes 161, 5 U. S.C.A. § 22, and the regulations issued pursuant thereto. This section of the Revised Statutes gave authority to the heads of all departments to issue regulations for the government of the employees within the departments; but, we said, that the violation of such regulations gives to the employee no right to a money judgment. We repeated what we had said in the previous opinion that, "Only Congress can create a right of action against the United States." In support of this statement we quoted at some length from the opinion of Mr. Justice Lurton, then Circuit Judge, in the case of Morgan v. Nunn, C.C., 84 F. 551, 553. In that case the petitioner relied upon a rule promulgated by the President of the United States on July 27, 1897, reading:

"No removal shall be made from any position subject to competitive examination, except for just cause, and upon written charges filed with the head of the department, or other appointing officer, and of which the accused shall have full notice, and an opportunity to make defense."

Plaintiff alleged that this rule had not been complied with. We quoted in our opinion of March 6, 1957, denying motion for a new trial, what Mr. Justice Lurton had to say of this position, as follows:

"It is said that the civil service rules, so far as they deny the unrestrained power of removal, are not the law of the land, but are mere executive orders, dependent for their force upon the the vigilance and earnestness of the chief executive in compelling his appointees to regard and obey regulations voluntarily imposed by him as a regulation by the appointing power of its otherwise unrestrained liberty of removal. To this contention I am constrained to yield my assent. These rules regulating the power of removal were made by the president, and may be repealed, altered, or amended at his pleasure. Prior to November 2, 1896, no such restraints existed; and, if after that date they came into force, it was alone by virtue of an executive order. Law is not thus enacted, altered, or amended. Law must be an expression of a rule of action by the legislative authority. These civil service rules, so far as they deal with the executive right of removal,—a right which is but an incident of the power of appointment,—are but expressions of the will of the president, and are regulations imposed by him upon his own action, or that of heads of departments appointed by him. He can enforce them by requiring obedience to them on penalty of removal. But they do not give to the employés within the classified civil service any such tenure of office as to confer upon them a property right in the office or place."

In that opinion we also quoted from the opinion of this court in Ruggles v. United States, 45 Ct.Cl. 86, and referred to the opinion in Miller v. United States, 45 Ct.Cl. 509, and we also cited the cases of Carr v. Gordon, C.C., 82 F. 373; Flemming v. Stahl, C.C., 83 F. 940, and Page v. Moffett, C.C., 85 F. 38, all of which are in accord with what Mr. Justice Lurton said in Morgan v. Nunn, supra.

This is the past history of the case in this court.

I proceed now to consider the correctness of those decisions in the light of the Supreme Court's opinion in Service v. Dulles, supra. That was a case brought in the District Court for the District of Columbia seeking "a declaratory judg-

ment that his discharge was invalid; an order directing the respondents to expunge from their records all written statements reflecting that his employment had been terminated because there was a reasonable doubt as to his loyalty; and an order directing the Secretary to reinstate him to his employment and former grade in the Foreign Service, with full restoration of property rights and payment of accumulated salary." 354 U.S. 370, 77 S.Ct. 1156.

The court, on the authority of United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681, held plaintiff had been discharged in violation of the regulations of the Department of State, and for that reason the Supreme Court reversed the judgment of the Court of Appeals, 2 Cir., 206 F.2d 897, dismissing plaintiff's petition, and remanded the case to the District Court, "for further proceedings consistent with this opinion." It did not pass on plaintiff's claim for accumulated salary.

Are our prior decisions in harmony with the holding in Service v. Dulles, supra?

It should be noted at the outset that Service was not in the classified civil service. State Department employees have no rights under the Civil Service Act. The tenure of their employment is governed by the Foreign Service Act of 1946, 60 Stat. 999. Section 611 of that Act, 60 Stat. at page 1013, provides:

"The Director General [an official in the State Department], acting under the general direction of the Board of the Foreign Service, shall be responsible for the keeping of accurate and impartial efficiency records. Under his direction there shall be assembled, recorded, and preserved all available information in regard to the character, ability, conduct, quality of work, industry, experience, dependability, and general usefulness of all officers and employees of the Service, including the reports of Foreign Service inspectors and the efficiency reports of su-

pervising officers. The Director General shall undertake such statistical and other analyses as may be necessary to develop the validity and reliability of efficiency reporting forms and procedures."

Section 637(a) provides for separation of an employee from the Service "for unsatisfactory performance of duty." It reads at 60 Stat. page 1016:

"The Secretary may, under such regulations, as he may prescribe, separate from the Service any Foreign Service officer above class 6 on account of the unsatisfactory performance of his duties; but no such officer shall be so separated from the Service until he shall have been granted a hearing by the Board of the Foreign Service and the unsatisfactory performance of his duties shall have been established at such hearing."

Section 638 provides for the separation of an employee from the Service "for misconduct or malfeasance." This section reads 60 Stat. at page 1016:

"The Secretary shall separate from the Service any Foreign Service officer or Reserve officer who shall be guilty of misconduct or malfeasance in office, but no such officer shall be so separated from the Service until he shall have been granted a hearing by the Board of the Foreign Service and his misconduct or malfeasance shall have been established at such hearing. Any officer separated from the Service in accordance with the provisions of this section shall not be eligible to receive the benefits provided by title VIII of this Act, but his contributions to the Foreign Service Retirement and Disability Fund shall be returned to him in accordance with the provisions of section 841(a)."

Under section 1135, 22 U.S.C.A. § 801 note existing rules and regulations governing the Service were to remain in effect "until modified or superseded by

regulations made in accordance with the provisions of this Act, unless clearly inconsistent with the provisions of this Act."

Service was discharged in violation of regulations issued by the Secretary of State pursuant to the authority granted him by the Foreign Service Act of 1946, supra.

In the instant case, it was the Civil Service Commission that was empowered by Congress to issue regulations under the Civil Service Act,[1] and those regulations were complied with. The Secretary of War, and the heads of other Government departments, by R.S. § 161, were given general authority to issue regulations for the conduct of the employees in their departments. The congressional authority to do so made no mention of the removal of employees. When Congress took up this subject, it conferred authority to issue regulations governing removal, not on the heads of departments, but on the Civil Service Commission. Any regulations concerning removal issued by the head of a department were issued without congressional sanction, and, therefore, do not have the force and effect of law. Hence, a violation of them does not render the United States liable to a money judgment.

It must be concluded that it is only for violation of the civil service acts and the regulations of the Civil Service Commission issued pursuant thereto for which the United States is liable to respond in damages.

In Service v. Dulles, supra, it was held that an employee could not be lawfully discharged without compliance with the regulations issued by the head of the department, *who in that case had authority to issue regulations governing removal of State Department employees.* Plaintiff in the instant case was discharged without compliance with the regulations of the Department of the Army, but the Secretary of the Army had no power to issue regulations relative to removal of employees. Congress has not required compliance with regulations issued by the head of the department as a prerequisite to the discharge of an employee, and, hence, a failure to comply with them does not render the United States liable to a money judgment. Only Congress, either directly or indirectly, can subject the United States to liability for a money judgment. I suppose this to be so well settled as to need no elaboration.

It will be noted that the Supreme Court in Service v. Dulles, supra, did not say the United States was liable for Service's salary from the time of his discharge to the time of his reinstatement; but even if it had, this would not require a holding that the United States was liable to plaintiff in the instant case. This is so, because in the Service case the Secretary of State was authorized to issue regulations relative to discharges of employees in the Foreign Service; whereas in the case at bar the Secretary of War had no such authority, that authority having been vested in the Civil Service Commission.

I think our former opinions are not in conflict with Service v. Dulles, supra, and that they are correct and should stand.

I think plaintiff's petition should be dismissed.

LARAMORE, Judge, joins in the foregoing dissenting opinion.

1. The Act of January 16, 1883 (22 Stat. 403), established the United States Civil Service Commission. In section 2 it was provided:

"That it shall be the duty of said commissioners:

"*First.* To aid the President, as he may request, in preparing suitable rules for carrying this act * * * into effect, and when said rules shall have been promulgated it shall be the duty of all officers of the United States in the departments and offices to which any such rules may relate to aid, in all proper ways, in carrying said rules, and any modifications thereof, into effect." 5 U.S.C.A. § 633.

This authority has resided in the Civil Service Commission ever since.