LittletoN, Judge,
witli whom Madden, Judge, concurs,
dissenting:
We cannot agree with the opinion of the majority in this case. Eelying mainly on the majority opinion of the court in the case of Nadelhaft v. United States, 132 C. Cls. 316, the majority opinion in the instant case holds that a “probationary appointee” acquires no right to the office which is protected by the Lloyd-LaFollette Act, as amended (62 Stat. 354, 5 U. S. C. 652), and that the Civil Service regulations relating to the removal of probationary employees require only that such employee be notified “in writing of the reasons for his separation and of its effective date.” The majority found that plaintiff was given the notice required by the regulation mentioned when she was told that she was being removed because her “conduct during the probational period of employment in this Installation as a clerk-typist, CAF-2, $1,954.00 per annum, has not been satisfactory to the Agency.” The majority also holds that failure of the employing agency, the United States Army, to accord to this plaintiff the procedural safeguards contained in its own regulations with reference to the separation of probationary employees, gives rise to no cause of action in this court because “it was not the Army that was empowered by Congress to issue regulations to carry into effect the Lloyd-LaFollette Act, as amended, but the Civil Service Commission.” The court notes that while the Civil Service regulations have the force and effect of law, those of the Army do not. It is the judgment of the majority that plaintiff’s motion for summary judgment be denied and that her petition be dismissed.
We disagree with the majority’s disposition of this motion for three general reasons. First, we believe that the Civil Service regulation applicable to and relied on by this plaintiff was not complied with by the employing agency. Second, we think that the War Department Civilian Personnel Eegu-lations No. 150 and No. 60 were valid regulations having the force and effect of law and that noncompliance with them in plaintiff’s case gave rise to a claim founded upon the regulations of an executive department under this court’s general jurisdiction. Third, inasmuch as defendant has *584 not filed a cross motion for summary judgment, and because plaintiff’s petition and defendant’s answer thereto raises another issue not made the basis for plaintiff’s motion, i. e., that her discharge during her probationary period was unlawful because arbitrary, summary judgment should not be rendered for defendant, the non-moving party. In fact defendant resisted plaintiff’s motion for summary judgment because of the allegations of arbitrary action in plaintiff’s petition, which allegations were denied by the answer. Despite the fact that the majority feels that none of plaintiff’s procedural rights under Civil Service regulations were violated on the facts presented by plaintiff’s motion for summary judgment, plaintiff is entitled to proceed with that part of her case on which her motion was not based and which is directly controverted by defendant’s answer.
Eegarding our first ground for dissent, i. e., that plaintiff’s procedural rights under Civil Service regulations were violated in that the notice of her separation did not comply with the regulations prescribing the contents of such a notice, we believe a fuller statement of the facts is required.
On September 20, 1946, plaintiff received a probational appointment, effective October 10, 1946, to the position of Clerk-typist, CAF-2, in the Finance Department of the United States Army, Fort Bliss, Texas. Plaintiff received her appointment after passing a competitive Civil Service examination.
On January 7, 1947, plaintiff received two reports of efficiency rating, one covering her performance of duties from October 10,1946, to December 16,1946, and marked “Administrative — Unofficial,” and one covering her performance from October 10, 1946, to December 31, 1946, marked “Special.” Each report showed a rating of “Good” with several elements marked “Outstanding” and with none marked “Weak.” Among the elements marked as “Outstanding” on the first report, were “maintenance of equipment, tools, instruments”; “skill in the application of techniques”; “industry”; “rate of progress on or completion of assignments”, and “dependability.” [Italics ours.] On the second report the elements rated as “Outstanding” were “presentability of work (appropriateness of arrangement and appearance of *585 work)”; “attention to pertinent detail”; “industry”, and “dependability.”
On April 4, 1947, plaintiff wrote to Major W. J. Warren, Chairman of the Efficiency Eating Board of Beview, Finance Office, U. S. Army, Fort Bliss, Tex., as follows:
Eeference is made to my efficiency rating of “Good”, covering period from 10 October 1946 to 31 December 1946.
I feel that this rating has not been based upon performance of the job, but rather on personal feelings— thus I am hereby requesting an adjustment of same.
If the Committee sees fit to review the facts in the case, I further request I be allowed to meet with them, in my own behalf.
On April 14, 1947, before any action had been taken on plaintiff’s request for a review of her rating, Major Warren, in his capacity of Finance Department Assistant, wrote plaintiff as follows:
Due to the fact that your conduct — during the probational period of employment in this Installation as a Clerk-typist, CAF-2, $1,954.00 per annum — has not been satisfactory to the Agency, your services in this office will be terminated at the close of business on 25 April 1947.
A notification of personnel action, dated April 25, 1947, gave as the reason for plaintiff’s removal “conduct not satisfactory to the Agency, during probational period.”
On April 28, 1947, plaintiff wrote to Major Warren requesting a written statement concerning the “specific instances when my conduct was such as could warrant the above [removal] action.” The reply of Major Warren, on the same date, merely stated:
Your attention is invited to Part 9-103, Federal Personnel Manual.[1]
*586 On May 13, 1947, plaintiff wrote Colonel W. E. Abeam, Finance Officer at Fort Bliss, and requested an opportunity to establish the fact that her separation was contrary to law and Civil Service regulations. She also requested a hearing. On the following day, Colonel Abeam wrote to plaintiff advising her that she should take her grievance up with the local office of the Civil Service Commission in El Paso, and that “no further action is contemplated by this office.”
On May 8,1947, plaintiff wrote to the Commanding General, Headquarters, Fourth Army, Fort Sam Houston, Tex., telling him that she had been discharged for unsatisfactory conduct, a charge which she felt she could prove was without foundation. She told the General that she had been unable to secure copies of the applicable regulations from the Army Finance Personnel Office and asked him to have sent to her “WD Civilian Personnel Regulation #105 (23 Feb. 1945)” and “Memorandum #10, Hq. Fourth Army (27 Jan. 1947).” On June 18,1947, Major Newbury of the Civilian Personnel Branch undertook to answer plaintiff’s letter of May 8, to the Commanding General. He advised her that a review of her discharge indicated that the action was taken in strict conformance with War Department and Civil Service regulations. As to her request for specific reasons and for copies of applicable regulations, the major stated:
Although it is regretted that the explanations given to you were not satisfactory from your point of view and that regulations were not readily available in your area, the action taken by the Finance Office was in compliance with pertinent rules and regulations, and is therefore considered final.
The major did not send Regulation No. 105 as requested by plaintiff. That regulation set forth the procedure to be followed when an employee wished to protest a discharge for unsatisfactory conduct.
On August 7, 1947, Major Newbury again wrote to plaintiff and in that letter he referred to her separation as a “separation for disqualification” and noted that Civilian Personnel Regulation No. 60 was applicable to her situation and not Regulation No. 105. Although it is true that the latter regulation does not apply to a separation for “dis *587 qualification,” plaintiff had no knowledge that her separation was for other than “unsatisfactory conduct,” as stated in previous letters and official notices, until receipt of the letter of August 7,1947. On August 26,1947, Major Warren issued a new Notification of Personnel Action which purported to change the earlier notice of April 25, 1947, to indicate that the nature of plaintiff’s termination was a separation for disqualification during probationary period rather than a separation for “conduct not satisfactory to the Agency during probational period.” The effective date of this notification was April 25,1947, the date of the first notice.
On August 28, 1947, plaintiff addressed a protest to the Grievance Board, Office of the Secretary of the Army, which was forwarded to Major Newbury for action and reply. On October 6, 1947, Major Newbury wrote to plaintiff, in part, as follows:
You have previously been advised that as you were separated while serving a probational period, you were excluded from grievance procedure as set forth in CPE 105. However, a review of the matter reveals that you were not provided with specific reasons for your discharge in voriting and an opportunity to reply.
The Finance Office, U. S. Army, Fort Bliss, has been advised that you be given a statement outlining specifically the reasons for the adverse action and an opportunity to reply within a reasonable time. Your reply will be reviewed by that office and a final decision based thereon will be made.
This office feels that the administrative prerogative vested in the Finance Officer, Ü. 8. Army, cannot he questioned when exercised judiciously and withim, existing rules and regulations. [Italics supplied.]
On October 13,1947, Colonel Ahearn wrote plaintiff stating that pursuant to the direction of the Chief of Finance, and in accordance with Civilian Personnel Regulation 60.3-5&, the Finance Office was required to inform her of the specific reasons for her separation from duty on April 25,1947. In general, the charges outlined in this letter were that plaintiff had indicated to her superiors that she did not consider the work assigned to her up to her training or ability, that she had displayed a superior attitude, and that she had insisted that the Branch head decisions be given to her in writing, *588 and that she had complained of the efficiency rating she had received.
Subsequent to her first notice of dismissal by the Army, plaintiff conferred with a Miss Eleanor Lytle of the Civil Service Kegional Office in El Paso, Texas, and was informed that because she was serving a probationary appointment she was not entitled to any relief before the Civil Service Commission.
On December 12, 1950, plaintiff secured employment with the Veterans Administration in Washington, D. C., where she worked until separated by a reduction in force on October 16, 1958. On December 7, 1953, plaintiff was employed by the Department of Justice and was still employed there on the date of the filing of her motion for summary judgment in November 1955. Since her reemployment by the Government plaintiff has received “Satisfactory” efficiency ratings and has been promoted three times.
Plaintiff, by affidavit accompanying her Motion for Summary Judgment, states that from April 25, 1947, when she was discharged by the Army, to October 27, 1950, the date on which her petition was filed, she earned $3,173.33. In this suit plaintiff seeks to recover the difference between the amount thus earned and the $8,175.82 she would have earned had she continued in the employ of the Army up to the date of her petition on October 27, 1950, or $5,001.49. .
Plaintiff’s motion is based entirely on the ground that the petition and documents supporting her motion establish that on the occasion of both attempted removal actions, the Army Finance Office failed to comply with either the applicable Civil Service regulations or War Department regulations.
The Civil Service regulation relied on by plaintiff and which defendant concedes is the one which prescribes the contents of the “notice” of separation of a person serving a probationary period, is as follows:
The notice to a person who is serving a probationary period must include a statement of the reasons for the separation, in writing. The notice to a person serving a trial period need merely state that his conduct or capacity is not satisfactory to the appointing officer. [Italics supplied.]
*589 The above regulation is found in Chapter Si, at page 21, of the Federal Personnel Manual, July 9, 1946, and represents a summary in one regulation of the contents of two more detailed regulations, one of which relates to the contents required in the notice of separation of a probationary employee, and the other of which relates to the contents required in the notice of separation of a war service appointee serving a trial period.
A person, such as the plaintiff herein, who was selected from a Civil Service register for appointment to a position in which she might ultimately acquire classified civil service status, was required by the Civil Service Act of January 16, 1883,22 Stat. 403, to serve a probationary period of whatever length the Commission might prescribe, and upon the successful completion of that probationary service, the appointee acquired classified civil service status.
A person appointed as a war service employee under the War Service Regulations issued by the Civil Service Commission, pursuant to Executive Order 9063, February 16, 1942, and Executive Order 9243, September 12, 1943, was required to serve a trial period of one year, upon the successful completion of which the appointee did not acquire civil service status.[2]
The Civil Service regulations governing the separation from Government service of persons serving a probationary period were entirely different from those governing the separation of persons serving a war service trial period. Civil Service Rule VII, Sec. 7.2 (3) provides as follows:
Probationary appointment. A person selected for appointment shall be duly notified by the appointing officer and upon accepting and reporting for duty shall receive from such officer a certificate of probational appointment. * * * If and when, after a full and fair trial, the conduct or capacity of the probationer is not satisfactory to the appointing officer, the probationer may at any time thereafter during this period be so notified in writing, with a full statement of reasons, and *590 this notice shall terminate his service. [Italics supplied.] [Code of Federal Regulations, Cum. Supp., Title 5, p. 1448.]
We should like to emphasize at this point that the above-quoted Civil Service regulation was not issued pursuant to the Lloyd-LaFollette Act of 1912, which act (being section 6 of the Post Office Appropriations Act for the year ending June 80, 1918), provided for the several procedural steps which must be taken in separating from Government service a person in the classified civil service. It has always been the position of the Civil Service Commission, which was agreed to by the majority of this court in the Nadelhaft case, supra, that the above-mentioned section 6 of the 1912 act has no application to persons serving a probationary period, but the controlling regulations of the Commission regarding probational employees were not issued pursuant to the provisions of that act. On the contrary, the above-quoted Civil Service regulation was issued pursuant to Eevised Statutes, Sec. 1753 (2d Ed.), and the act of January 16, 1883, supra.
Section 1753 of the Eevised.Statutes provides as follows:
The President is authorized to prescribe. such regulations for the admission of persons into the civil service of the United States as may best promote the efficiency thereof, and ascertain the fitness of each candidate in respect to age, health, character, knowledge, and ability for the branch of service into which he seeks to enter; and for this purpose he may employ suitable persons to conduct such inquiries, and may prescribe their duties, and establish regulations for the conduct of persons who may receive appointments in the civil service. [Eevised Statutes, 2d. Edition 1878, 312.]
The above section is merely a restatement of the provisions of section 9 of the act of March 3, 1871,16 Stat. 495, 514, 515.
The act of January 16,1883, 22 Stat. 403, entitled “An act to regulate and improve the civil service of the United States” provides for the establishment of the Civil Service Commission with three commissioners to be appointed by the President. Section 2 sets forth the various duties of the commissioners, in part, as follows:
FIRST. To aid the President, as he may request, in preparing suitable rules for carrying this act into effect, *591 and when said rules shall have been promulgated it shall be the duty of all officers of the United States in the departments and offices to which any such rules may relate to aid, in all proper ways, in carrying said rules, and any modifications thereof, into effect.
* * * * *
fourth, that there shall be a period of probation before any absolute appointment or employment aforesaid.
Section 7 of the 1883 act provided, in part:
* * * But nothing herein contained shall be construed * * * to take from the President any authority not inconsistent with this act conferred by the seventeen hundred and fifty-third section of said statutes [Revised Statutes] * * *.
It seems quite clear to us, even without the citation of authority contained in the Code of Federal Regulations, that Regulation 7.2 (3) relating to the separation notice of a probationary employee, was issued pursuant to section 1753 of the Revised Statutes and section 2 of the act of January 16, 1883, and not under section 6 of the Lloyd-LaFollette Act of 1912 (37 Stat. 539, 555) or the amendment thereto in 1948 (back pay statutes) (62 Stat. 354), which latter two acts contain no provision whatever for the issuance of regulations thereunder by any one. We do not believe that anyone could seriously suggest that section 6 of the so-called Lloyd-LaFollette 1912 Act or its amendment, which merely provide for the steps which must be taken to remove a classified civil servant, were intended to repeal or modify the Civil Service Act of 1883.
The Civil Service Commission had full authority to make Regulation 7.2 (3) relied on by plaintiff. The act under which it was made clearly authorized and justified it and there is nothing in the Lloyd-LaFollette Act of 1912 which repealed or in any way modified the authority of the Civil Service Commission to do what it had done under the act of 1883. The statutes relating to Civil Service employees of the United States are enacted for the benefit and protection of the employees and unless there is some clear and positive provision in the statute which takes away from the Civil Service Commission or from the department concerned authority *592 to make a regulation upon which, the civil service employee relies, those regulations must be strictly complied with. We think it is clear in this case that the regulation was not complied with.
We have then a valid regulation of the Civil Service Commission which requires that when, after a full and fair trial, the conduct or capacity of a probationer is not satisfactory to the appointing officer, such probationer may be separated but he or she must have from the employing agency a notice of separation containing a “full statement of reasons” why such conduct was not satisfactory. Plaintiff, a probationer, did not receive any such “full statement of reasons” until long after her separation was an accomplished fact. She merely received a notice which stated that “your conduct during the probational period of employment in this Installation * * * has not been satisfactory to the Agency.” That plaintiff’s conduct was “not satisfactory” to the agency was the circumstance required to be in existence by the regulations before the agency could proceed to remove the probationer, but a mere statement that the agency was not satisfied with the probationer’s conduct, did not comply with the regulations requiring that the notice of separation contain a full statement of the reasons why the probationer’s conduct was not satisfactory to the agency. The giving of reasons long after the date of plaintiff’s separation did not cure this defect.
If this plaintiff had been serving a war service trial period, the notice stating that her conduct was not satisfactory to the employing agency would have been sufficient and in compliance with War Service Eegulation 18.5 (c) which provides as follows:
(c) Trial period. Except for persons appointed for a specific period of one year or less, the first full year of service shall be a trial period, satisfactory completion of which shall be considered part of the entrance examination. If and when, after a full and fair trial during this period, the conduct or capacity of the trial appointee be not satisfactory to the appointing officer, the appointee may at any time thereafter during the trial period be so notified in writing and such notice *593 shall terminate his service. [Code of Federal Regulations, Cum. Supp., Title 5, p. 1463.]
But this plaintiff was not a war service appointee serving a trial period. She had passed a competitive civil service examination, had been placed on the Civil Service Register, and received her appointment from such register. Such appointment was made strictly in compliance with section 2 of the 1883 Civil Service Act, sufra, and the regulations regarding her appointment and her separation during the probationary period were made under authority of that act and also section 1753 of the Revised Statutes. That regulation, requiring that her notice of separation contain a full statement of the reasons why her conduct was not satisfactory to the employing agency, was not complied with. Inasmuch as this court has jurisdiction over claims founded upon “any regulation of an executive department,” plaintiff has clearly established a right to recover in this case. Simon v. United States, 113 C. Cls. 182. We do not know precisely why the Civil Service Commission in its rules provided that a war service appointee serving a trial period might be separated on a notice which merely stated that his conduct or services had not been satisfactory to the employing agency, whereas a person serving a probationary period under a regular civil service appointment must, prior to his separation from such position, be given a written statement of the reasons why his conduct or services were not satisfactory to the employing agency. We suppose it was because the Commission believed that the separation of a probationary employee who would probably become a career employee, was a more serious matter than the separation of a trial war service employee. The Civil Service Act of 1883 requires, among other things, the giving of examinations, the compiling of registers for the innumerable positions in the Government covered by that act, and the selection from those registers of eligibles. It also requires that a person selected for appointment in the regular civil service must serve a probational period before his appointment becomes absolute. Such an elaborate procedure requires time and expense both on the part of the Government and of the private citizen who seeks a civil service appointment in the regular service. *594 None of these steps are required before a war service employee may be hired, but such an employee does not acquire permanent status in the regular civil service.
Although a person serving a probational appointment preliminary to the acquisition of a permanent civil service status has no appeal from the decision of his employing agency to dispense with his services, we think that the requirement in the Civil Service regulations that he be advised in writing of the full reasons why his services or conduct were not satisfactory, provides a needed protection both to the employee and to the Government itself. It is certainly in the best interest of the Government which has gone to the trouble and expense of holding examinations and determining the qualifications of the employee, and of the employee who has gone to the trouble of meeting the statutory requirements for a particular job, that the employee’s separation from that job not depend on the whim or personal dislike of another Government employee who happens to be his superior or supervisor. Although the requirement that the supervisor set down in writing the reasons why the probationer’s conduct and services are not satisfactory to him may not seem a difficult or formidable one, it is, we think, a real protection for both the Government service and the employee involved against arbitrary, capricious and, of necessity, expensive and wasteful determinations by supervisors to get rid of a probationer whom they do not like but who is otherwise qualified in every way for the position held, and whose conduct and services are actually satisfactory.
In holding that the regulation requiring that a probationer whose discharge is desired be notified in writing of the full reasons why his conduct or services are not satisfactory to the employing agency has been complied with, when that employee is merely told that his services and conduct are not satisfactory and no reasons therefor are given, or where the reasons are given months after the separation takes place, we think the majority is destroying for all practical purposes the only protection the Government and the employee have that the expense and trouble gone to by both in making and *595 securing the probationary appointment shall not be wasted by the whim of some other employee in the agency.
We think that the reliance by the majority on the case of Nadelhaft v. United States, supra, is misplaced. Although Nadelhaft, who was appointed October 9, 1950, was separated from Government service while serving a probational appointment, that is the only fact which his case and the instant case have in common. Nadelhaft, a probational appointee, was, during the probationary period, suspended under the United States Loyalty Program. Following a full notice and service of charges, a hearing, and an appeal before the Loyalty Eeview Board of the Civil Service Commission, Nadelhaft’s removal was found to be unwarranted and he was restored to his position in the Government service, but he was not given his back pay for the period of his suspension. Nadelhaft brought suit in this court to recover the back pay he claimed he was entitled to receive under section 6 (b) of the amendment in 1948 to the Lloyd-LaFollette Act, supra. He did not claim that any of the procedural safeguards relating to his separation had not been complied with. He merely stated that because he had been suspended and then reinstated, section 6 (b) of the 1948 Act required that the employing agency pay him his salary. He brought his claim in this court as one founded upon an act of Congress, i. e., the act of June 10, 1948. The court held that the mandate in that act to the employing agency to give back pay related only to persons “in the classified civil service” and that until a probational appointee had successfully completed his probationary term of service, he had not acquired such civil service status as would entitle him to back pay upon reinstatement. Dictum in the decision in that case indicates that the court would also have held that Nadelhaft would have had no cause of action had he claimed that the procedural requirements of section 6 (a) of the 1948 Act or of Section 6 of the 1912 Lloyd-LaFollette Act were not followed. There seems no point, however, in extending that dictum to the instant case, as the majority does in quoting from the Nadelhaft case, as follows:
In short, we are of the opinion that a probationary appointee acquires no right to the office, that is to say, *596 a right protected by the Lloyd-LaFollette Act, as amended. His right to the office and 'protection by this Act only accrues after the probationary period has expired and his appointment becomes permanent. [Italics supplied]
We are of this opinion because plaintiff Watson is not claiming the protection of the Lloyd-LaFollette Act nor is she claiming that she has any rights under that act. She is merely claiming the protection of a valid regulation issued, not pursuant to the Lloyd-LaFollette Act, or its amendment, but pursuant to the 1883 Civil Service Act and to section 1753 of the Eevised Statutes relating to the Civil Service. That act (1883) provides for probational appointments and gives the Civil Service Commission the authority to issue regulations concerning such appointments. The regulation relied on by plaintiff was issued in compliance with those acts and was not complied with by the War Department when it discharged her. For the violation of a right protected by such a regulation, plaintiff is entitled to recover. Simon v. United States, supra.
Plaintiff also claims that she is entitled to recover because certain War Department regulations regarding the procedures to be followed in removing a probationary employee were not followed in her case. The majority holds that the Army regulations relied on by plaintiff do not have the force and effect of law because only the Civil Service Commission was authorized by the Lloyd-LaFollette Act to issue regulations carrying that act into effect. As noted earlier herein, the authority of the Civil Service Commission to issue regulations relative to Government employees (whether civil service, war service, temporary, etc.) originates not from the Lloyd-LaFollette Act but from its general regulatory power granted in the Eevised Statutes and the Civil Service Act of 1883. Section 2 of the latter act provides that the Commission should aid the President by preparing suitable rules for carrying the act into effect, and that when such rules have been promulgated, “it shall be the duty of all officers of the United States in the departments and offices to which any such rules may relate to aid, in cdl proper *597 ways, in carrying said rules, and any modifications thereof, into effect.”
The two regulations issued by the War Department (and War Department Regulations are approved by the President) and relied on by plaintiff, No. 105 and No. 60, provided a clear and specific procedure to be followed in separating a probationary employee, which procedure was somewhat similar to that outlined and required in section 6 of the 1912 Act and in section 6 (a) of the 1948 amendment to the Lloyd-LaFollette Act.
With respect to the coverage of employees by section 6 of the Lloyd-LaFollette Act, the Civil Service regulations provide as follows:
Employees covered. The procedural provisions of section 6 of the Lloyd-LaFollette Act apply only to employees in the classified service. The procedures prescribed by that section are not mandatory for 'probational or trial period employees, * * *. The agency may, however, if it so desires, follow those procedures for probational or trial period employees. [Civil Service Personnel Manual, Sl-2.]
The above regulation appears to us to be a “suitable rule” for carrying into effect the 1888 Act relating generally to the Civil Service. Although the Lloyd-LaFollette Act contained no direction to issue regulations, the Commission had sufficient power to issue regulations concerning that Act by virtue of its general legislation, and we think that it also had the power to issue the regulation in question permitting any agency (in this case the War Department) so desiring to extend the separation procedures of section 6 of the 1912 Act to probational employees. Pursuant to the clear and specific authority contained in that regulation, the War Department elected to make a clear regulation extending the substance of the procedural safeguards of section 6 of the 1912 Act to its probational employees by the issuance of Regulation 105 and Regulation 60 applicable to civilian personnel in the War Department. At the beginning of War Department Regulation No. 60, the following statement, signed by order of the Secretary of War, appears:
*598 Tlie attached Civilian Personnel Regulation No. 60, Revised, 28 August 1948, supplements chapter SI, Separation, United States Civil Service Commission Federal Personnel Manual. Portions of the referenced chapter of the United States Civil Service Commission Federal Personnel Manual governing furlough and suspension are supplemented by Civilian Personnel Regulation 60.
[AG 230 (22 Aug. 46)]
These two regulations of the War Department, approved by the President, issued pursuant to a valid regulation of the Civil Service Commission, which in turn was issued pursuant to Section 2, FIRST, of the Civil Service Act of 1883, have, we think, the force and effect of law, to the same extent as if the Commission had issued them directly and the failure of the War Department to follow the procedures outlined therein in separating this probational employee gave rise to a cause of action against the United States founded upon the valid regulation of an executive department, pursuant to express provision of our jurisdictional act.
Again we wish to call the attention to the fact that this plaintiff is not claiming the benefit of the provisions of the Lloyd-LaFollette Act, but rather the benefit of valid regulations of the War Department, which, in effect, incorporated and required to be followed in cases involving the separation of probational employees of the War Department, procedures similar to and in substance the same as those contained in the Lloyd-LaFollette Act which were mandatory in the separation of classified civil service employees.
The War Department left no doubt as to its reasons for making the rules it did in connection with the discharge of a person serving a probational appointment. At the beginning of Civilian Personnel Regulation 60 the statement is made by the War Department that “Separation is a personnel action which results in the loss of an employee from the Department.” In its statement of policy concerning involuntary separations, the regulation states, in part, as follows:
3-1. It is the policy of the Department to afford maximum protection to its employees against arbitrary or inequitable action in separations. The circumstances surrounding separation actions will be investigated completely and made a matter of record.
*599 It is obvious from the above that the War Department was as concerned, as we have suggested the Civil Service Commission was, with avoiding waste occasioned by unnecessary turnover in personnel and also with avoiding the possibility of arbitrary and inequitable treatment of employees. In giving to the War Department and other Government agencies the right to promulgate personnel regulations in addition to those issued by the Civil Service Commission, the Commission apparently felt that it could not possibly issue rules and regulations which would cover all of the peculiar circumstances which might exist in the many Government agencies and that in many instances it would be wisest to leave to those departments familiar with conditions and circumstances the option of promulgating their own rules and regulations as long as they did not conflict with law. Nothing in the two War Department regulations in question is in conflict with any statute, or any other regulation of the Commission. They are certainly not in conflict with the Lloyd-LaFollette Act which, while it makes the separation procedures outlined therein mandatory for persons having civil service status, does not forbid expressly or by necessary implication the use of the same procedures for others who do not have such status. We think that it was clearly within the power of the Civil Service Commission to extend the provisions of the Lloyd-LaFollette Act to the separation of probationary employees if the Commission felt that in so doing it was effectuating the purposes of the Civil Service Act of 1883. This the Commission did not do. Instead, the Commission issued the rule permittmg the various Government agencies to extend the Lloyd-LaFollette Act separation procedures to their employees who had not yet acquired civil service status if the Government agency desired to do so.
The provisions in War Department Civilian Personnel Kegulations 105 and 60 relied on by plaintiff were issued pursuant to the express permission of the Civil Service Commission issued in a valid regulation under the Civil Service Act of 1883. We think that this court should be very reluctant to declare such regulations of the War Department to be invalid and without force and effect. Those regulations have been in use for many yéars in the department. Un *600 doubtedly other Government agencies, wishing to avoid unnecessary personnel turnover and arbitrary treatment of new employees, have taken advantage of the same Civil Service regulation permitting the promulgation by Government agencies of similar regulations. The casting of doubt upon the validity of such departmental regulations may well cause incalculable harm both to the department and to its employees.
We think it is clear from the following facts of record in which we deal fully with Regulation No. 60, that the War Department failed to comply with its own regulations regarding the dismissal of plaintiff, a probational employee.
In its letters to plaintiff following her separation on April 25, the War Department admitted that Regulation 105 was applicable to her case. However, it did not comply with her request to give her a copy of that regulation, nor did it follow the procedures outlined therein in connection with her separation.
On August 26, 1947, the Army issued a new Notification of Personnel Action in which it purported to correct the former notice of April 25, by changing the nature of the action from termination for “conduct not satisfactory to the Agency during probational period” to “disqualification during probationary period.” In connection with this notification, which was made retroactive to April 25,1947, plaintiff was advised that War Department Regulation No. 105 did not apply but that Civilian Personnel Regulation No. 60 was applicable.
That part of Regulation No. 60, which deals with “Separation for Disqualification,” provides in part as follows:
b. Any employee, veteran or nonveteran, graded or ungraded, separated for disqualification will receive a statement setting forth the nature, date, specific reasons for the action, and right to reply. See c below.
g. The employee, if he so desires, may l'eply to the statement of reasons. No action will be taken to efect the separation under this paragraph of any employee wntil he has had sufficient opportunity to prepare affidavits or necessary evidence to substantiate his position. The employee’s reply will be considered carefully, in order to assure that the separation action is justified.
*601 The reply will be filed with the statement of reasons, * * *.
‡ $
Method, of Effecting “Notification of Personnel Action.” e. (1) Statement of reasons — The employee will receive the form, “Notification of Personnel Action,” on or before the effective date of the separation action. There will be entered under “Remarks” a brief statement indicating the reason for the action.
(2) Effective date. — The effective date of the separation action will he determined to allow at least 5 worl&mg days after receipt of the statement of reasons. [Italics supplied.]
The second Notification of Personnel Action, issued August 26, 1947, and made effective as of April 25, 1947, was, if possible, a more flagrant example of noncompliance with regulations than was the first notification. Not only were no specific reasons given for the action, as required by the above-mentioned Civil Service regulations, and by War Department Regulation No. 60, but the action was made effective as of a date some months earlier, which made it impossible for the employee to have an opportunity to reply to reasons, if they had been given, and certainly not the five working days which was the minimum interval required by the regulation. It accordingly appears that this second notification was no more effective to terminate, remove or separate plaintiff than was the first.[3]
It was not until October 13, 1947, that the Army gave plaintiff a statement in writing of the reasons for her separation from duty on April 25, 1947. Although the letter commenced by saying that the statement of reasons was given in accordance with Civilian Personnel Regulation 60.3-5&, it it obvious that there was no compliance with Civilian Personnel Regulation 60.3-5e (1) which provided that the employee should receive the Notification of Personnel Action on or before the effective date of the separation action and that a statement indicating the reasons for the action would *602 appear on that notification. Furthermore, a statement made in October, of the reasons for a separation for disqualification effective in the prior April, gave scant attention to Civilian Personnel Regulation 60.3c which provided that no action would be taken to effect the separation of a War Department employee until he had had opportunity to reply to the reasons given as required in Civilian Personnel Regulation 60.35.
We do not think that the giving in October 1947 of a statement of reasons for plaintiff’s termination corrected the procedural defects in previous unlawful attempts to terminate plaintiff’s service on April 25,1947, and on August 26,1947. The fact that a few days prior to the date of the statement of October 13, 1947, plaintiff would have completed her probationary period, suggest that by that time she was entitled to the full protection of section 6 of the Lloyd-LaFollette Act. However, it is not necessary to discuss that possibility since it seems clear to us that the Government is liable on the basis of its failure to comply w,ith the Civil Service regulation applicable to removal of probationary employees and with the applicable War Department regulations referred to herein. The War Department regulations and Civil Service Regulation 7.2 (3) required that before a probational appointee could be separated for unsatisfactory conduct or service, that appointee must be given in writing a full statement of the reasons why his conduct or services were not satisfactory. This was not done and the giving of such reasons months after plaintiff had been separated from her position did not cure this fatal defect.
Finally, we do not think the majority is correct in granting summary judgment to defendant on the present state of the pleadings. While in general, summary judgment may be granted to non-moving parties, despite the failure of either the Federal Rules or the rules of this court to cover the point, that is so only where the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of any material fact to be tried. Assuming without admitting that the majority is correct in holding that plaintiff was accorded *603 by defendant full compliance with the Civil Service regulation 7.2 (3) relating to the method to be followed in separating probational employees, it would follow, of course, that her motion for summary judgment on that point should be denied. And if that were the only issue raised in the case, then summary judgment could be granted to the non-moving defendant and the petition dismissed. However, as defendant itself points out in resisting plaintiff’s motion for summary judgment, plaintiff’s petition and the supporting documents purport to make out a cause of action based on arbitrary action by the War Department officials, and defendant, thinking this to be a sound ground for recovery, if proved, insisted that the case should go to trial on this issue. Probably because her claim based on allegations of procedural defects would require no trial, whereas her claim based on allegations of arbitrary action would require a trial, plaintiff decided to move for summary judgment on her procedural defect claim, supported by documentary evidence and affidavits. Upon tire court’s decision that her claim for recovery on the basis of procedural defect is not supported by the record, plaintiff should then have an opportunity to go to trial on the other portion of her case involving her claim of arbitrary dismissal. That it would be error for the court to render judgment for defendant and dismiss the petition at this stage, is illustrated by the case of Filson v. Fountain, 171 F. 2d 999.
In that case plaintiff alleged that the defendant had acquired certain realty subject to a resulting trust in favor of plaintiff in the amount of $6,000 and prayed for judgment in that amount and for other relief. Defendant’s answer denied the existence of the alleged resulting trust and also the existence of any other obligation on his part to the plaintiff. Defendant then moved for summary judgment on the sole ground that under applicable State law there could be no resulting trust in favor of the plaintiff, ignoring in his motion and briefs plaintiff’s general prayer for “other relief”. The District Court held that under applicable State law no resulting trust had arisen in favor of plaintiff. The court granted the defendant’s motion for summary judgment *604 and ordered the petition dismissed. The Court of Appeals agreed with the District Court that under State law no resulting trust arose in favor of plaintiff but it held that the granting of summary judgment for the defendant and the dismissal of the complaint was erroneous because the complaint contained a general prayer for “other relief” and alleged facts on the basis of which the Court of Appeals felt that a personal judgment of $6,000 could and should have been recovered by plaintiff even in the absence of a resulting trust. The appellate court then went on to examine the case and to find that such a personal obligation did exist. It remanded the case to the trial court with instructions to enter a personal judgment in favor of the plaintiff for $6,000. Defendant filed a timely motion for a modification of the order of the Court of Appeals in order to permit a trial as to the existence of the personal obligation which defendant had denied in his answer and which had not been the subject of defendant’s motion for summary judgment. This motion for a modification of the order was denied, and defendant petitioned for certiorari, attacking only that portion of the Court of Appeals’ ruling which ordered the District Court to enter judgment for plaintiff on the personal obligation of defendant in the amount of $6,000. The Supreme Court (336 U. S. 681) reversed the Court of Appeals on this one point on the ground that the order to enter judgment was on an issue not litigated in the motion for summary judgment and as to which defendant had had no opportunity to present a defense before the trial court. The court stated:
Summary judgment may be given, under Buie 56, only if there is no dispute as to any material fact. There was no occasion in the trial court for Mrs. Fountain [defendant] to dispute the facts material to a claim that a personal obligation existed, since the only claim considered by that court on her motion for summary judgment was the claim that there was a resulting trust. When the Court of Appeals concluded that the trial court should have considered a claim for personal judgment it was error for it to deprive Mrs. Fountain [defendant] of an opportunity to dispute the facts material to that claim by ordering summary judgment against her.
*605 The case was accordingly remanded to the District Court for further proceedings on the question of Mrs. Fountain’s alleged personal obligation to plaintiff.
As will be noted, the decision of the Supreme Court reversed the mandate of the Circuit Court requiring the Dis-trice Court to enter judgment for plaintiff on the personal liability of $6,000 owed her by defendant. It did not reverse the holding of the Circuit Court that it was error for the District Court to enter summary judgment for defendant on one claim where there was another claim stated in the petition, placed in issue by the answer, and which had not been litigated in the motion for summary judgment. We believe the same principle applies in the instant case and that at the very least this case should be remanded to a commissioner of the court for trial on the issue of arbitrary dismissal. While resolution of that issue will undoubtedly require testimony, particularly from the officer who initiated the dismissal proceedings, the record now before the court on plaintiff’s motion for summary judgment gives many strong indications of arbitrary action on the part of War Department officials. To mention only a few, plaintiff’s efficiency ratings for her first few months of service carried the final rating of “Good”; the presence of plus marks, indicating outstanding performance, on most of the underlined (essential) elements on the rating form suggests that the final rating was in error and should have been “Very Good”. In any event, plaintiff thought that some faulty arithmetic had been indulged in by the rating official and she appealed to the chairman of the Efficiency Eating Board of Eeview. That official, Major W. J. Warren, also happened to be plaintiff’s supervisor in the Finance Department and the man who initialed his approval on her second efficiency rating from which she was appealing. Instead of replying to her appeal for a review of her rating, which appeal was dated April 4, 1947, Major Warren, acting in his capacity as Assistant, Finance Department, on April 14, 1947, sent plaintiff the complained of notice of separation in which he merely stated that her services had not been satisfactory. Apparently no action was ever taken or even contemplated with respect to plaintiff’s appeal from her efficiency rating of “Good”. In *606 fact, it appears that one of the reasons [4] why her conduct was considered “not satisfactory” to Major Warren was because she appealed the efficiency rating which he had approved, since, in the statement of reasons for her dismissal, finally given to her on October 13, 1947, one of the reasons stated was that she had complained of the efficiency rating given her. A reading of the letters addressed to plaintiff by various Army officers in the course of her long fight to unsnarl the procedural mess into which her separation had become involved, reveals a scarcely veiled hostility on the part of those officers and a sense of bureaucratic outrage that a CAF-2 clerk-typist should dare to question the “administrative prerogative vested in the Finance Officer, U. S. Army”. (See letter of October 6, 1947, referred to earlier herein.)
Civil Service Eegulations relating to probationary employees provide that they shall be given a “full and fair trial”. Even on the present record such a trial would not seem to have been given this plaintiff. Assuming that the employing official had the discretion to form a judgment of plaintiff’s performance and behavior, any decision reached by him to separate such an employee must be made in good faith, as this court held in the case of Dwight Crocker v. United States, 130 C. Cls. 567. In the Orocker case the employing official was required to make a determination whether or not to reinstate plaintiff in the job from which he had been separated. On the theory that employee morale would be damaged if the other employees should learn that management had made a mistake in dismissing plaintiff, defendant refused to reinstate plaintiff. The court held that such a refusal to reinstate was not made in good faith and was arbitrary and that accordingly this court had power to review the decision and set it aside.
We think that this plaintiff is entitled to a trial on the issue of the good faith of the Army officials in bringing about *607 her removal. See also Elizabeth P. Knotts v. United States, 128 C. Cls. 489.
In conclusion, we would grant plaintiff’s motion for summary judgment on the grounds (1) that a validly issued regulation of the Civil Service Commission (issued pursuant to the Act of 1883) applicable to the separation of probationary employees, was not complied with; and (2) that regulations of the War Department applicable to the separation of probationary civilian employees, and issued pursuant to proper regulations of the Civil Service Commission and approved by the President, were not complied with. Finally, we would, in any event, remand the case to a commissioner of the court for a trial on the issue of the arbitrariness of plaintiff’s dismissal, an issue not relied on in the motion for summary judgment, but an issue which was denied by defendant in its answer and which, if proved, would entitle plaintiff to recover her back pay.

 Section 9.103 of Title 5, Code of Federal Regulations, 1947 Supplement, provides in part as follows :
“Procedure in separating employee serving a probationary or trial period. (a) Any person serving a probationary or trial period shall be given a full and fair trial in the performance of the duties of the position to which appointed. If the performance of his duties or his conduct is not satisfactory to the agency his services shall be terminated by notifying him in writing of the reasons for his separation and of its effective date. * * *” This regulation did not go into effect until May 1, 1947, subsequent to plain tiff’s removal, and, therefore, had no application.

 The Civil Service Personnel Manual of April 21, 1947 provides at p. S2-17 as follows:
“Some appointments are made subject to the serving of a probationary period: under war service regulations, some appointments were made subject to the serving of a trial period.”

 Defendant has made an attempt to distinguish between these types of personnel actions. Chapter SI of the Federal Personnel Manual, July 9, 1946, provides on page 2: “The term ‘removed’ in the Lloyd-LaFollette Act covers not only removals as defined on page Sl-4, but also separations based on disqualification, disability, or inefficiency if the separations are made without the employee’s consent and are initiated by the agency.”

 The majority opinion says that one of the reasons for plaintiif’s removal finally given her in the letter of October 13, 1947 was that “she had insisted that any criticism of her work by her superiors should be put in writing.” We do not find any such reason in that letter. The nearest thing to it is the statement: “It was also reported that you refused to accept a decision made by a Branch head unless put in writing.” That a “decision made by a Branch head” consisted of a criticism of plaintiff’s work, seems to us to be an unwarranted conclusion.